# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

SHAUN S. ARMES      :
            :
            :
 v.          :   Civil No. CCB-11-112
            :
            :
CSX TRANSPORTATION INC., et al. :
            :
            :

## MEMORANDUM

Shaun Armes, proceeding *pro se*, has sued CSX Transportation Inc. ("CSX") and the Brotherhood of Locomotive Engineers and Trainmen ("the Union") for violating Title VII of the Civil Rights Act of 1964 and the Railway Labor Act.[1] Now pending before the court are two separate motions to dismiss by the defendants. The issues in this case have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the following reasons, the defendants' motions will be granted.

## BACKGROUND

Mr. Armes, who is African American, suffers from sleep apnea and diabetes. From 1999 through 2007, he worked for CSX as a freight conductor and locomotive engineer. In 2006, he became a member of the Union. On November 30, 2006, Mr. Armes, who was employed as a locomotive engineer at the time, requested additional rest due to fatigue stemming from his sleep apnea and diabetes. His request was denied. The next day, Mr. Armes was operating a coal train traveling on the Alexandria Extension rail line out of Brunswick, Maryland and failed to stop at a

---

[1] Mr. Armes has abandoned his claims arising under the Genetic Information Nondiscrimination Act and the Age Discrimination in Employment Act. (*See* Pl.'s Answer to Mot. to Dismiss at 4.)

red signal located at the Chesapeake road crossing. Mr. Armes was forced to apply the emergency brake and ultimately stopped the train approximately four engine lengths beyond the signal.

On December 4, 2006, CSX informed Mr. Armes that he was suspended without pay, pending the outcome of a formal investigation into his conduct. At the formal investigation, Mr. Armes was represented by the Union and took full responsibility for the incident. On January 10, 2007, CSX informed Mr. Armes that he was officially terminated from employment with the company. The Union immediately appealed the termination and recommended that Mr. Armes enter arbitration with CSX. During arbitration, Mr. Armes's union representative failed to raise the issue of his medical conditions as a reason for his fatigue, which he alleged contributed to the incident. Following arbitration, a union representative informed Mr. Armes that if he submitted a Letter of Leniency Reinstatement and included a statement that he would not pursue back pay, CSX would reinstate his employment. Mr. Armes refused to submit such a letter.

On September 18, 2009, Mr. Armes received an adverse arbitration award letter, notifying him that all administrative recourse had been pursued and that his employment with CSX would not be reinstated. On September 15, 2010, Mr. Armes filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was outspoken about unfair treatment of minority employees while employed at CSX, and that CSX had used the December 1, 2006 incident as an excuse to terminate his employment. Mr. Armes also alleged that numerous white locomotive engineers were reinstated after committing similar and, in some cases, more serious infractions. On October 16, 2010, Mr. Armes received a letter from the EEOC, notifying him that his claim was dismissed because his charge was not

timely filed.

Mr. Armes filed this action on January 13, 2011, alleging that the defendants engaged in discriminatory and retaliatory conduct against him based on his race and disabilities and violated the Railway Labor Act ("RLA") by breaching the duty of fair representation. On March 21, 2011, CSX filed a motion to dismiss the complaint. On March 25, 2011, the Union filed a separate motion to dismiss. Mr. Armes has opposed both motions.

## **ANALYSIS**

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set

forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, -- U.S. ----, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

### A. Title VII Claim

Before a plaintiff may file suit under Title VII, she must file a charge of discrimination with the EEOC. *See Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citing 42 U.S.C. § 2000e-5(f)(1)). The EEOC charge limits the scope of any later judicial complaint, and it must be in writing and verified under oath or affirmation under penalty of perjury. *Id.* Furthermore, it must be filed within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). This period is extended to 300 days in a deferral state, such as Maryland, which has a local or state agency with authority to grant or seek relief. *Id.* The timeliness requirements for filing discrimination claims are to be strictly enforced. *Karim v. Staples, Inc.*, 210 F. Supp. 2d 737, 748 (D. Md. 2002); *see also Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005) (observing that "Congress intended the exhaustion requirement to serve the primary purposes of notice and conciliation.").

Here, Mr. Armes was terminated by CSX on January 10, 2007. He filed his EEOC charge of discrimination and retaliation on September 15, 2010, well beyond the 300-day time limit for asserting an unlawful discrimination claim under Title VII. Mr. Armes nonetheless argues that under a continuing violation theory, the last act contributing to his Title VII claim did not occur until September 18, 2009, when he received final notice that his employment with CSX would

not be reinstated. Even if the court were to accept Mr. Armes's claim that the last act contributing to his Title VII claim did not occur until September 18, 2009, his claim still would be time barred. He did not file his EEOC complaint until 362 days after he received final notice that he would not be reinstated. Accordingly, Mr. Armes's claim against CSX is time barred.

Mr. Armes also attempts to assert a claim for discrimination against the Union. In his EEOC complaint, however, he did not identify the Union as a defendant. (*See* CSX's Mot. to Dismiss, Ex. 2.) Mr. Armes also has failed to state any facts suggesting that the Union engaged in discriminatory or retaliatory conduct. The Union's motion to dismiss Mr. Armes's Title VII claim will be granted.

### B. RLA Claim

Although courts liberally construe pleadings filed by *pro se* litigants, *see Boag v. MacDougall*, 454 U.S. 364, 365 (1982), a *pro se* plaintiff must still plead facts to state a claim for relief. *Sado v. Leland Mem'l Hosp.*, 933 F. Supp. 490, 493 (D. Md. 1996). Here, Mr. Armes has not cited a specific violation of the RLA, and it is difficult to determine whether he even states a claim for relief against either defendant. Construing the complaint liberally, however, it appears that Mr. Armes has attempted to assert a "hybrid" breach of the duty of fair representation/breach of contract claim under the RLA.

A so-called "hybrid" claim under the RLA "involves two interrelated claims, one against the plaintiff's labor union and the other against the plaintiff's employer." *Dement v. Richmond, Fredericksburg & Potomac R.R. Co.*, 845 F.2d 451, 457 (4th Cir. 1988) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983)). The claim against the labor union is an implied right of action for breach of the duty of fair representation. *Id.* The claim against the

employer is an action for breach of the collective bargaining agreement "if he can allege that the employer's conduct somehow contributed to the union's breach." *Id.* (quoting *Steffens v. Bhd. of Ry., Airline and Steamship Clerks, Freight Handlers, Express and Station Employees*, 797 F.2d 442, 445 (7th Cir. 1986)).

To the extent that Mr. Armes is alleging such a hybrid claim, his claim is untimely. The statute of limitations for hybrid breach of contract and breach of a union's duty of fair representation is six months. *See Triplett v. Bhd of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Employees, Local Lodge No. 308*, 801 F.2d 700, 702 (4th Cir. 1986); *Kozy v. Wings West Airlines, Inc.*, 89 F.3d 635, 640 (9th Cir. 1996) (explaining that the six-month period begins to run when the employee knows or should have known about a breach). Here, at the very latest, Mr. Armes's six-month time period to file a claim under the RLA began running on September 18, 2009, when he received notice through his arbitration award that he would not be reinstated at CSX. *See Kozy*, 89 F.3d at 640 (holding that limitations period begins to run when the plaintiff learns of an adverse arbitration award). Because he did not file his complaint in this case until January 13, 2011, over one year after he received notice of his adverse arbitration award, his RLA claim is time barred. The defendants' motions to dismiss will be granted. A separate Order follows.

June 20, 2011  
Date

/s/  
Catherine C. Blake  
United States District Judge

6